IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

WSI HOLDINGS, LLC, a Texas Limited Liability Company, d/b/a
WELLHEAD SYSTEMS, INC.,

       Plaintiff,

v.

GEORGE BALAS, individually, and T&T FOUNDRY, INC., a Colorado Corporation.

       Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, WSI Holdings, LLC, d/b/a Wellhead Systems, Inc., by and through its attorneys, Podoll & Podoll, P.C., as their Complaint and Jury Demand against the above-named Defendant state and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff WSI Holdings, LLC, d/b/a Wellhead Systems, Inc. ("Plaintiff" or "WSI") is a Texas limited liability company with its principal place of business located at 710 West McVey, Hill City, Kansas 67642. No member of WSI is a citizen or resident of the State of Colorado. 49% of the membership interests in WSI are owned by individuals who are citizens and residents of the State of Kansas. 51% of the membership interest of WSI is owned by a limited liability company, WSI Investments, LLC, organized under the laws of the State of Texas. The ultimate individual owners of WSI Investments, LLC are residents and citizens of Texas,

Wisconsin, New York, Louisiana, and France. No ultimate individual owner of WSI Investments, LLC, is a resident or citizen of the State of Colorado.

2. On information and belief, Defendant George Balas ("Balas") is an individual residing in and a resident of Colorado, residing in Pueblo. Balas is the principal owner of T&T.

3. Defendant T&T Foundry ("T&T") is a Colorado corporation with its principal place of business located at 601 North Main Street, Suite 211, Pueblo, Colorado 81003.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendants. Also, the amount in controversy exceeds $75,000, exclusive of interest and costs. In addition, Plaintiff asserts a claim against Defendant pursuant to 18 U.S.C. § 1836, over which the district courts of the United States have original jurisdiction pursuant to 18 U.S.C. § 1836(c).

5. Venue is proper in this Court pursuant to 28 U.S.C §1391(b) because Defendant T&T is a resident of the state of Colorado, its principal place of business is in Colorado and the acts and circumstances giving rise to the claims in this case occurred in Colorado. Further, Defendant Balas conducts the business of T&T in Pueblo, Colorado, and upon information and belief, resides in Pueblo, Colorado.

## GENERAL ALLEGATIONS

6. Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

7. WSI develops, manufactures and sells highly-specialized parts used for production in the oil industry.

8.      WSI is one of the limited number of companies competing in this specialized field and sells products for which there is a finite market. There is a finite demand for the products WSI manufactures.

9.      If WSI manufactures 500-600 separate component parts used in products assembled by WSI and sold to businesses or individuals in the oil production and oil drilling business.

10.     Among the products manufactured by WSI are polished steel rod clamps. These clamps are used on drilling rigs during the process of extracting oil from the ground.

11.     WSI developed a new design for rod clamps (the "WSI Clamps") and a more economical process for manufacturing them.

12.     The advancements in the product and the manufacturing process developed by WSI for WSI Clamps were unique in the industry.

13.     WSI was referred to Balas and T&T as a potential source to build the machinery and molds necessary to manufacture the component parts for the WSI Clamps, as well as other products manufactured, assembled, and sold by WSI.

14.     T&T represented its ability to manufacture and deliver precision machined products and components better and less expensively than its competitors.

15.     WSI and its representatives approached Balas and T&T with proprietary designs for the WSI Clamps, and other products, and advised Balas and T&T that WSI's designs were to be used exclusively for the benefit of WSI and not to be shared with anyone else.

16.     Balas and T&T assured WSI that WSI could trust T&T with the designs and the exclusive manufacturing of products for WSI, including specifically, the WSI Clamps, and that

T&T would never market or sell components designed by WSI, and exclusively manufactured for WSI, to anyone else.

17.    Further, Balas invited WSI to repose trust and confidence in him to keep their proprietary design confidential, to exclusively manufacture components for WSI, including the WSI Clamps, and not to sell component parts for WSI Clamps or WSI Clamps themselves to anyone but WSI. In addition to his assurances Balas assured WSI of his integrity and honesty.

18.    It was of paramount importance to WSI to engage someone WSI could trust to develop machinery pursuant to WSI's design and to manufacture component parts for WSI, including specifically the WSI Clamps, because WSI did not believe it could obtain patent protection for the WSI Clamps.

19.    WSI reposed its trust and confidence in Balas to keep the design of WSI component parts, including specifically the WSI Clamps, confidential and to only manufacture component parts according to WSI's designs and design specifications, including specifically the WSI Clamp for WSI, as Balas had repeatedly promised he would do.

20.    Based upon Balas' assurances that he could be trusted with WSI's designs, WSI was induced to enter into a contractual agreement with T&T.

21.    After reposing trust and confidence in Balas to keep its design confidential and to exclusively manufacture component parts for WSI, including specifically the WSI Clamps, WSI agreed to pay, and paid, Balas and T&T all expenses and costs associated with the development and manufacturing process of WSI parts, including the WSI Clamps. This included paying for the equipment to build the molds to manufacture the component parts sold by WSI. WSI spent hundreds of thousands of dollars to develop the molds to manufacture component parts it sold.

22.    Subsequently, WSI entered into negotiations with T&T to manufacture the component parts for WSI, including the WSI Clamps, exclusively for WSI and pursuant to WSI's design specifications.

23.    Based upon the molds that T&T and Balas created, including the molds for the WSI Clamps, WSI began placing orders for component parts based upon the agreement of the parties as discussed above.

24.    Eventually, the terms of the agreement between the parties was formalized in written purchase orders containing the agreement of the parties and under which they had performed prior to the formalization of the terms and conditions set forth in the purchase orders. These written terms and conditions were systematically acknowledged by T&T in writing to indicate T&T's acceptance of each purchase order and its terms and conditions. The terms and conditions of the parties' contractual agreements, including those set forth in the purchase orders were standard in the industry.

25.    Pursuant to the agreement of the parties and the terms and conditions in purchase orders for component parts placed by WSI, including purchase orders for WSI Clamps, T&T and Balas agreed:

> 2.9 BUYER'S PROPERTY USED BY SELLER. Any items used by Seller in the design, production or delivery of the Products, will be Buyer's property if the price to be paid by Buyer for any Products is specifically stated to include the costs of such items or if they otherwise are paid for or provided to Seller by Buyer. While any such "Buyer Property" is in Seller's possession, such property will at Seller's expense be stored and kept in good condition by Seller and Seller will replace any such property which is damaged or destroyed or reimburse Buyer for any property which is damaged or destroyed or reimburse Buyer for any damage to or loss of such property . . . No such Buyer Property will be used in the production or design of any articles other than the Products, nor will Products

made using such items be furnished or quoted to any party other than Buyer, without Buyer's written consent. At the completion or termination of the Purchase Order, such Buyer Property will be delivered or disposed of as Buyer directs.

26. Furthermore, the agreement of the parties and the terms and conditions of purchase orders confirmed the confidential nature of information provided by WSI to T&T and Balas, and confirmed the agreement and contractual and fiduciary relationship, which induced WSI to place orders with T&T and Balas, including orders for WSI Clamps:

> **2.11 CONFIDENTIALITY AND INTELLECTUAL PROPERTY.**
> …Seller shall be responsible for the safeguarding of all secret, confidential, or restricted information that may be disclosed to Seller by Buyer or that may be developed in connection with the Purchase Order . . . Seller may not manufacture or sell to any party other than Buyer, Products designed by Buyer or Products containing features designed by Buyer.

27. The agreement of the parties and the terms and conditions of the purchase orders included warranties and remedies that T&T gave WSI concerning products it was producing as follows:

> **2.6 SELLER'S WARRANTIES.** Seller represents, warrants, and covenants to Buyer the following:
> a. Products. Each Product delivered to Buyer hereunder will be: (i) free from defects in design (except to the extent the design is provided to Seller by Buyer), materials and workmanship, (ii) of merchantable quality, (iii) will conform with the samples, models, drawings, designs, and specifications provided or approved by Buyer and with any representations, affirmations or promises made by Seller or its agents whether or not made in writing; (iv) will be free from any security interest or other adverse claim against title; (v) will not infringe any U.S. or other patent, copyright, trade secret, trademark or other proprietary right of a third party except to the extent such products are manufactured or designed pursuant to Buyer's specifications; and (vi) any services provided by Seller will be performed in a good and workmanlike manner.
> . . .

6

2.7 BUYER'S REMEDIES. If any Product does not conform to Seller's representations, warranties, and covenants, Buyer, at its option, may return the Product to Seller at Seller's expense and risk or may hold the Product pending receipt of Seller's instructions. At Buyer's election as requested to Seller, Seller shall immediately replace the Product with a conforming Product, repair the Product or return any related payments made to Seller by Buyer. Such remedies of Buyer are not exclusive and will be in addition to any other rights or remedies available under applicable laws, including Buyer's rights to have a third party repair or replace nonconforming or defective Products or perform nonconforming services and to seek damages from Seller. Buyer will be under no duty to inspect any Product prior to its use or resale, and neither Buyer's inspection or testing of, failure to inspect or test, payment for or possession or use of any nonconforming Product will be deemed to be a waiver of release of Seller's warranties and obligations hereunder, which will survive all such events.  [

28.    Despite inviting and accepting WSI's repose of trust and confidence, and despite T&T's and Balas' contractual commitment, Balas and T&T secretly began marketing fully-assembled WSI Clamps to WSI's competitors contrary to both their verbal and contractual undertakings on behalf of WSI.

29.    Balas and T&T sold WSI's proprietary clamps to WSI's competitors while continuing to represent to WSI that they were manufacturing component parts exclusively for WSI. On information and belief, Balas solicited WSI competitors who had not previously sold clamps, in order to interest them in purchasing clamps that T&T was selling as its own product, using WSI's design for the WSI Clamps.

30.    Because of the finite demand for WSI Clamps the sale of WSI Clamps to competing manufacturers of oil production products significantly eroded WSI's profits from sales to end users.

31.     In addition, Balas and T&T marketed and sold other production products WSI had engaged Balas and T&T to manufacture to WSI's competitors, further damaging WSI by diluting its sales of other products to end users and affecting WSI's margins.

32.     WSI has sustained significant damages as the result of the wrongful and perfidious conduct of Balas and T&T well in excess of this Court's $75,000 jurisdictional limit for diversity cases.

### FIRST CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets, 18 U.S.C. §1836, et seq.)**

### *WSI Holdings, LLC v. T&T Foundry, Inc.*

33.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

34.     The technical and engineering information developed by WSI, together with the methods, processes, procedures and tangible equipment developed at WSI's expense for purposes of forging and manufacturing the WSI Clamps are hereinafter referred to as the "WSI Secrets."

35.     WSI is the entity in which rightful legal or equitable title to the WSI secrets is reposed.

36.     WSI has taken reasonable measures to keep the WSI Secrets from becoming available to persons other than those selected by Plaintiff to have access thereto for limited purposes.

37.     The WSI Secrets derive independent economic value from not being generally known to, and not being readily ascertainable and accessible through proper means, by another person who can obtain economic value from the disclosure or use of the WSI Secrets.

38.     The WSI Secrets are trade secrets as defined by 18 U.S.C. § 1839(3).

39.     T&T was allowed to access to the WSI Secrets under circumstances giving rise to a duty on the part of T&T to maintain the secrecy of the WSI Secrets, and pursuant to express instructions that the WSI Secrets were not to be disclosed to or used for the purpose of forging or manufacturing clamps for any person or entity other than WSI.

40.     T&T knowingly and intentionally disclosed the WSI Secrets to third parties who are competitors of WSI, and utilized the WSI Secrets to manufacture clamps and other WSI products for competitors of WSI without the express or implied consent of WSI.

41.     Through its actions as described above, T&T misappropriated the WSI Secrets.

42.     T&T's misappropriation of the WSI Secrets was accomplished through willful and malicious conduct on the part of T&T, including through misrepresentations and other conduct by T&T intended to conceal the misappropriation from WSI.

43.     As a direct and proximate result of T&T's misappropriation of the WSI Secrets, WSI has suffered damages in the form of lost revenues and future revenues, lost profits and the erosion of WSI's margin on historical and future sales.

44.     T&T has also been unjustly enriched as a direct result of its misappropriation of the WSI Secrets.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant on its First Claim for Relief in an amount to be determined at trial for its actual economic loss caused by Defendant T&T Foundry, Inc.'s misappropriation of the WSI trade secrets, damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, exemplary damages pursuant to the provisions of 18 U.S.C. § 1836(b)(3)(C), prejudgment interest, attorney fees, costs and such other and further relief as this Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets – Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101)

### *WSI Holdings, LLC v. T&T Foundry, Inc.*

45.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

46.     The WSI Secrets were trade secrets within the meaning of Colo. Rev. Stat. § 7-74-102(4).

47.     T&T misappropriated the WSI Secrets by disclosing or using the WSI Secrets without express or implied consent by Plaintiff.

48.     T&T's misappropriation of the WSI Secrets was attended by circumstances of fraud, malice, or a willful and wanton disregard of Plaintiff's rights.

49.     As a direct and proximate result of T&T's misappropriation of the WSI Secrets, WSI has suffered damages in the form of lost revenues and future revenues WSI would have enjoyed from the sale of the WSI Clamps but for T&T's misappropriation of the WSI Secrets.

50.     T&T has also been unjustly enriched as a direct result of its misappropriation of the WSI Secrets.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant T&T Foundry, Inc. on its First Claim for Relief in an amount to be determined at trial for its actual economic loss caused by T&T's misappropriation of the WSI trade secrets, damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, exemplary damages pursuant to the provisions of Colo. Rev. Stat. § 7-74-104(2), prejudgment interest, attorney fees, costs and such other and further relief as this Court deems appropriate.

**THIRD CLAIM FOR RELIEF**
**(Breach of Express Contract/Breach of Warranty)**

*WSI Holdings, LLC v. T&T Foundry, Inc.*

51.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

52.     Plaintiff and T&T entered into an express contract whereby Plaintiff agreed to provide T&T with designs and other proprietary information relating to WSI products, including specifically WSI Clamps, and to pay all expenses associated with the tooling and refining of the manufacturing process by which WSI products and WSI Clamps as designed by Plaintiff would be cast and manufactured.

53.     T&T also provided WSI with specific warranties concerning products ordered by WSI, including a warranty that the products would (a) conform to WSI's design and be free from defects in design, materials and workmanship; (b) be of merchantable quality; and (c) conform to samples provided and/or approved by WSI.

54.     WSI placed orders with T&T pursuant to purchase orders for WSI products, including WSI Clamps, and T&T agreed to the terms and conditions of the purchase orders by manufacturing products, including WSI Clamps, and accepting payment from WSI.

55.     T&T agreed to maintain as confidential the proprietary information provided by Plaintiff and to cast and manufacture the WSI Clamps exclusively for Plaintiff.

56.     Plaintiff fully performed its obligations pursuant to the terms of the express contract with T&T by providing the proprietary information to T&T and by paying all expenses associated with the tooling and refining of the manufacturing process by which the WSI Clamps would be cast and manufactured.

11

57.    Plaintiff further paid to T&T the agreed-upon price for all WSI products and WSI
Clamps cast and manufactured for Plaintiff by T&T.

58.    T&T breached the express contract with Plaintiff as described above by using the
proprietary design for the WSI Clamps, as well as the tooling and manufacturing process
developed at Plaintiff's expense, to manufacture and sell to one or more of Plaintiff's competitors
WSI products, including without limitation rod clamps that are substantially identical to the WSI
Clamps.

59.    T&T also breached its warranties to WSI by shipping hundreds of thousands of
dollars' worth of goods, which did not conform to WSI's design or approved samples and which
were not of merchantable quality.

60.    T&T's breach of its express contract and warranties with Plaintiff as described
above was material.

61.    As a direct and proximate result of T&T's breach of the express contract and breach
of warranties as alleged above, Plaintiff has suffered, and continues to suffer, damages in the form
of lost or diminished sales, lost profits, erosions of its margins and other consequential damages.

62.    It was foreseeable to Plaintiff and T&T at the time of contracting that Plaintiff
would suffer damages in the form of lost or diminished sales, lost profits and erosion of its margins
in the event of a breach of the above-referenced express contract and breach of warranties by T&T.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant T&T
Foundry, Inc. on its Third Claim for Relief in an amount to be determined at trial for its past and
future economic damages caused by T&T Foundry, Inc.'s breach of express contract and breach

of warranties, prejudgment interest, costs and for such other and further relief as this Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
### (Alternative Claim for Unjust Enrichment)

### *WSI Holdings, LLC v. T&T Foundry, Inc.*

63.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

64.     In the alternative, and only if it is determined that an express contract was not formed between Plaintiff and T&T as alleged herein, Plaintiff conferred a benefit upon T&T by providing T&T with designs and other proprietary information relating to WSI products, including the WSI Clamps, and by paying all expenses associated with the tooling and refining of the manufacturing process by which WSI products and WSI Clamps could be cast and manufactured.

65.     Specifically, this benefit Plaintiff conferred upon T&T enabled T&T to cast and manufacture WSI products, including specifically WSI Clamps, utilizing the proprietary information provided by Plaintiff and the tooling and manufacturing processes for which Plaintiff paid without having incurred any of the costs or expenses associated therewith.

66.     T&T received the benefit described above at Plaintiff's expense.

67.     It would be unjust for T&T to retain and utilize for its own benefit, the proprietary designs, together with the tooling and manufacturing processes paid for by Plaintiff, without paying commensurate compensation to Plaintiff.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant T&T Foundry, Inc. on its Alternative Fourth Claim for Relief in an amount to be determined at trial for the reasonable value of the benefit conferred upon Defendant and realized by Defendant, at

Plaintiff's expense, for prejudgment interest, attorney fees, costs and such other and further relief as this Court deems appropriate.

## FIFTH CLAIM FOR RELIEF
### (Alternative Claim for Promissory Estoppel)

### *WSI Holdings, LLC v. T&T Foundry, Inc.*

68.    Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

69.    In the alternative, and only if an express contract is not found to been formed between the Plaintiff and T&T as alleged herein, T&T promised to maintain as confidential the designs and other proprietary information developed by Plaintiff concerning or relating to WSI products, including specifically WSI Clamps, and further promised that if Plaintiff paid all costs and expenses associated with tooling and refining of the manufacturing process to cast and manufacture WSI products, including specifically WSI Clamps, T&T would cast and manufacture WSI products exclusively for Plaintiff.

70.    Plaintiff reasonably and justifiably relied upon T&T's promises as alleged above in electing to provide, and in providing to T&T, the designs and other proprietary information developed by Plaintiff relating to WSI products, including specifically WSI Clamps.

71.    Plaintiff also reasonably and justifiably relied upon T&T's promises as described above in electing to pay, and actually paying, all costs and expenses associated with tooling and refining of the manufacturing process that enabled T&T to cast and manufacture WSI products, including specifically WSI Clamps.

72.    T&T reasonably should have expected that its promises as alleged herein would induce the actions alleged by Plaintiff.

73.     Injustice can only be prevented by enforcing T&T's promises as alleged above.

74.     T&T breached its promises to Plaintiff by using the designs and other proprietary information provided by Plaintiff, together with the tooling and manufacturing process developed at Plaintiff's expense, to manufacture and sell WSI products, including specifically WSI Clamps, to Plaintiff's competitors.

75.     As a direct and proximate result of T&T's breach of promise as alleged above, Plaintiff has suffered, and continues to suffer, damages.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant T&T Foundry, Inc. on its Fifth Claim for Relief in an amount to be determined at trial for its past and future economic loss, together with prejudgment interest, costs and such other and further relief as this Court deems appropriate.

## SIXTH CLAIM FOR RELIEF
### (Tortious Interference with Prospective Business Advantage)

*WSI Holdings, LLC v. T&T Foundry, Inc. and Balas*

76.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

77.     Through communications with Plaintiff, T&T and Balas knew that WSI products, and specifically WSI Clamps, as developed by Plaintiff, represented a new product for use in the oil and gas industry which, together with the tooling and manufacturing processes for casting and manufacturing the WSI Clamps as paid for by Plaintiff would provide a business advantage and future profits for Plaintiff in a very competitive and specialized field.

78.     T&T and Balas obtained information and access to tooling and manufacturing processes paid for by Plaintiff under circumstances in which T&T and Balas knew it was expected

to keep the information confidential and to use the tooling and manufacturing processes solely for the benefit of Plaintiff.

79.    By using the designs and other proprietary information of Plaintiff relating to the WSI Clamps, as well as the tooling and manufacturing processes developed at Plaintiff's expense to manufacture and sell WSI products, including WSI Clamps, to Plaintiff's competitors, T&T and Balas intentionally and wrongfully interfered with Plaintiff's prospective business advantage in the competitive and finite market for these products.

80.    Through its actions as described above, T&T and Balas have caused, and continue to cause, economic harm to Plaintiff in the form of lost or diminished sales of the WSI Clamps, lost profits and erosion of WSI's margins.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants T&T Foundry, Inc. and George Balas on its Sixth Claim for Relief in an amount to be determined at trial for its past and future damages, prejudgment interest, costs and such other and further relief as this Court deems appropriate.

**SEVENTH CLAIM FOR RELIEF**
**(Conversion)**

*WSI Holdings, LLC v. T&T Foundry, Inc. and George Balas*

81.    Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

82.    Through their actions and conduct as alleged above, T&T and Balas knowingly exercised dominion and control over the tooling and machinery paid for by Plaintiff and developed at Plaintiff's expense.

83. The physical property and the processes used for forging and manufacturing WSI products, including specifically WSI Clamps, have significant value, and are the property of Plaintiff.

84. By using this property belonging to Plaintiff to manufacture and WSI products to Plaintiff's competitors, T&T and Balas knowingly acted without Plaintiff's authorization and with intent to permanently deprive Plaintiff of the use or benefit of the property or at least the exclusive use and benefit of the property.

85. As a direct and proximate result of T&T's and Balas' conversion of Plaintiff's property as described above, Plaintiff has been damaged in an amount to be determined at trial, but not less than the amount Plaintiff paid for tooling and for the development of the manufacturing process by which the WSI products are cast and manufactured, together with lost or diminished profits caused by T&T's and Balas' conversion of Plaintiff's property.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant T&T Foundry, Inc. and George Balas on its Seventh Claim for Relief for conversion in an amount to be determined at trial for the value of the property converted, past and future economic loss, prejudgment interest, costs and such other and further relief as this Court deems appropriate.

## EIGHTH CLAIM FOR RELIEF
### (Civil Theft – Colo. Rev. Stat. § 18-4-405)

### *WSI Holdings, LLC v. T&T Foundry, Inc. and George Balas*

86. Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

87. Through its actions as described above, T&T and Balas knowingly obtained control over property belonging to Plaintiff without authorization and did so with the specific intent to

permanently deprive Plaintiff of the benefit of the property, or if they had initial authorization, such authorization was specifically limited to the use of such property for WSI's exclusive benefit.

88.     Pursuant to the provisions of Colo. Rev. Stat. § 18-4-405, the owner of stolen property may maintain an action against the taker thereof and in any such action, may recover three times the amount of the actual damages sustained by him, and may also recover costs of the action and reasonable attorney fees.

89.     As a result of T&T's and Balas' civil theft of Plaintiff's property as alleged above, Plaintiff is entitled to damages an amount equal three times the amount of the value of the stolen property, together with costs and reasonable attorney fees incurred in this action.

WHEREFORE, Plaintiff prays for judgment in its favor and against T&T Foundry, Inc. and George Balas on its Eighth Claim for Relief in an amount equal to three times the value of the property belonging to Plaintiff that has been stolen by Defendants T&T Foundry, Inc. and George Balas, together with Plaintiff's attorney fees, costs and for such other and further relief as this Court deems appropriate.

**NINTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty)**

*WSI Holdings, LLC v. T&T Foundry, Inc. and Balas*

90.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

91.     T&T and Balas invited WSI's trust and confidence.

92.     T&T and Balas assured WSI that it could be trusted with its proprietary designs, the maintenance of the proprietary designs for WSI's exclusive benefit and the retention of inventory for WSI's exclusive use based on such designs.

93.     WSI reposed trust and confidence in T&T and Balas.

94.     T&T and Balas assumed a duty to act and represent WSI's interests in maintaining the confidentiality of WSI's design and exclusive manufacturing.

95.     By virtue of their confidential relationship a fiduciary duty arose between WSI on the one hand and T&T Foundry, Inc. and Balas on the other hand.

96.     T&T Foundry, Inc. and Balas breached their fiduciary duties by, among other things and without limitation: (a) without disclosure, utilizing WSI's designs for their own purposes to sell to competitors of WSI; (b) engaging in a conflict of interest; (c) collecting money from WSI for the casting and machining required to make WSI products, including the WSI Clamps, and then using the same for their own purposes; and (d) disavowing their agreement to exclusively manufacture WSI products, including WSI Clamps, for WSI.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant T&T Foundry, Inc. and George Balas on its Ninth Claim for Relief for breach of fiduciary duty in an amount to be determined at trial for the value of the property converted, past and future economic loss, prejudgment interest, costs and such other and further relief as this Court deems appropriate.

## TENTH CLAIM FOR RELIEF
### (Injunctive Relief – Colo. Rev. Stat. § 7-74-103)

### *WSI Holdings, LLC v. T&T Foundry, Inc. and Balas*

97.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

98.     Pursuant to Colo. Rev. Stat. § 7-74-103, temporary and final injunctions including affirmative acts may be granted on such equitable terms as the Court deems reasonable to prevent or restrain actual or threatened misappropriation of a trade secret.

19

99.     As of the filing of this Complaint, T&T and Balas continue to engage in conduct that constitutes a misappropriation of the WSI trade secrets as alleged herein.

100.     T&T's and Balas' continuing misappropriation of WSI's trade secrets is causing further harm to Plaintiff and will continue to cause harm to Plaintiff unless T&T and Balas are restrained from manufacturing and selling WSI products, including WSI Clamps to Plaintiff's competitors.

WHEREFORE, Plaintiff prays this Court for an Order permanently enjoining Defendant T&T Foundry, Inc. from manufacturing or selling WSI products, including specifically rod clamps that are substantially identical to the WSI Clamps, to anyone other than Plaintiff, and for such other and further temporary or permanent injunctive relief as this Court deems reasonable and equitable to prevent or restrain Defendant T&T Foundry, Inc. from actual or threatened misappropriation of WSI trade secrets.

### ELEVENTH CLAIM FOR RELIEF
#### (Replevin – Rule 104, C.R.C.P.)

*WSI Holdings, LLC v. T&T Foundry, Inc.*

101.     Plaintiff incorporates herein by reference as if set forth with complete particularity all preceding paragraphs of its Complaint.

102.     T&T is in possession of machinery and molds necessary to manufacture component parts of WSI Clamps, as well as other products manufactured, assembled and sold by WSI.

103.     Pursuant to its agreement with WSI, including the terms and conditions of WSI purchase orders, T&T agreed that the equipment and molds maintained by T&T to manufacture WSI component parts, including WSI Clamps, are owned by WSI.

104.     WSI has a corresponding right to the possession of such equipment and molds.

105.    The equipment and molds are being detained by T&T against WSI's claim of right of possession.

106.    The manner and means by which T&T came into possession of the equipment and molds are described above.

107.    T&T continues its unauthorized use of equipment and molds to sell WSI products, including WSI Clamps, to WSI's competitors.

108.    T&T retains the equipment and molds against WSI's claim of rightful possession.

109.    The equipment and molds (as well as the actual values of the same) will be described in Plaintiff's Motion for an Order of Possession.

110.    The foregoing described property has not been taken for a tax assessment or fine pursuant to statute; or seized under an execution agreement the property of WSI.

111.    Pursuant to Rule 104, C.R.C.P., WSI may, at any time before the trial of this matter claim the delivery of property as provided in the foregoing Rule.

WHEREFORE, Plaintiff prays for judgment in its favor and against T&T Foundry, Inc., on its Eleventh Claim for Relief and requests an order of possession of the physical property described herein, together with its attorney's fees, costs and such other and further relief as the Court deems just.

## JURY DEMAND

Plaintiff hereby demands a jury of six (6) on all issues so triable.

Dated this 30th day of March, 2017.

Respectfully submitted,

PODOLL & PODOLL, P.C.

By:   _s/Richard B. Podoll_____
Richard B. Podoll
Robert A. Kitsmiller
5619 DTC Parkway, Suite 1100
Greenwood Village, Colorado 80111
Telephone: (303) 861-4000
Facsimile: (303) 861-4004
Email: rich@podoll.net
Email: bob@podoll.net
*Attorneys for Plaintiffs*

**Plaintiff's Address:**
WSI Holdings, LLC d/b/a
Wellhead Systems, Inc.
710 West McVey
Hill City, Kansas 67642